# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMMUNICATIONS WORKERS OF
AMERICA, AFL-CIO,

    Plaintiff,

    v.

VERIZON SERVICES, INC., *et al.*,

    Defendants.

Civil Action No. 01-2633 (CKK)

## MEMORANDUM OPINION
(August 30, 2005)

Presently before the Court are the parties' cross Motions for Summary Judgment.

Plaintiff, the Union that represents Verizon workers, is suing Verizon over Verizon's failure to

implement Plaintiff's interpretation of an arbitration award.  The underlying dispute for which

the parties sought arbitration concerns the time when Verizon employees must be permitted to

take vacation days upon request.  Although the arbitrator ruled in favor of Plaintiff, the parties

now dispute whether the arbitration award requires Verizon to grant requests for vacation made

with less than a day's notice.

After consideration of the parties' motions, briefs, and supporting documentation, as well

as the underlying arbitration award and the relevant law, the Court finds that Plaintiff's Motion

for Summary Judgment shall be granted, and Defendants' Motion for Summary Judgment shall

be denied.

## I.    MATERIAL FACTS NOT IN DISPUTE

The material facts of this case are straightforward and undisputed.  Plaintiff

Communications Workers of America ("CWA" or "the Union") is the labor organization and collective bargaining representative for a unit of Verizon employees in the District of Columbia, Maryland, Virginia and West Virginia. Def.'s Stmt. ¶ 1. Defendants (collectively "Verizon") are two Verizon entities: Verizon Services, Inc., a Delaware corporation, and Verizon Maryland, a Maryland corporation. *Id.* ¶ 2. CWA and Verizon have been parties to successive collective bargaining agreements covering, in part, the working conditions of the employees in the bargaining unit represented by CWA. *Id.* ¶ 3.

In late 1999 and early 2000, a dispute arose between Verizon and CWA over vacation scheduling procedures. *Id.* ¶ 10. The parties arbitrated this dispute before Arbitrator Margery Gootnick, who issued her Opinion and Award on May 1, 2000. *Id.* ¶¶ 10, 12. The dispute concerned the interaction of a portion of the 1998 General Agreement and a subsequent 1998 Memorandum of Understanding ("1998 MOU"). *Id.* ¶¶ 7-8. Article 31, Section 10 of the General Agreement addresses the allocation and administration of vacation time. *Id.* ¶ 7. The 1998 MOU addresses, among other issues, Vacation Scheduling Percentages and the "17 percent rule," which states that "[d]uring 1999, at least 17% of the employees in each vacation administrative work group shall be permitted to schedule off in a given week."[1] *Id.* ¶ 8. The parties' submitted the following Stipulated Issue to Arbitrator Gootnick: "Does the Company violate the 1998 Common Issues Memorandum of Understanding by denying vacation even though less that 17 percent of the work group is off; and, if so, what is the appropriate remedy?" *Id.* ¶ 11. Plaintiff has shown that at least one of the examples of a vacation request denial that

---

[1]The percentage was increased to 18 percent in 1999. Compl. ¶ 8. However, the Court will refer to this as the "17 percent rule" throughout.

led to the arbitration involved a last minute vacation request.  *See* Pl.'s Mot. Ex. 5 (Lewis

Grievance).  The grievance filed by Anna Lewis involved a last minute request for vacation due

to a death in her family, at a time when less than 17 percent of the work force was off.  Pl.'s Mot.

Ex. 5.  Lewis' request for vacation was denied, and she was instead "granted excused time

unpaid."  *Id*. at 2.

In the Opinion and Award, Arbitrator Gootnick found that the language of the 1998 MOU

superceded the language of the 1998 General Agreement to the extent necessary to effectuate the

17 percent rule.  *Id*. ¶ 12.  Specifically, she held that "[t]he Company shall cease and desist from

denying vacation or rescheduling of vacation when less than 17% of a work group is off."  *Id*. ¶

12.  Specifically, the award states that "[t]he Memorandum of Understanding provides that at

least 17% of the employees in each vacation administration work group shall be permitted to

schedule off in a given week," and that "[t]here is nothing in the Memorandum of Understanding

that requires a specific time period for scheduling (or rescheduling) vacation."  Pl.'s Mot. Ex. 1

(Arbitration Award) at 24.  The award states that "up to 17% of the employees in each work

group can take vacation based *on the earliest request on any day*.  The Company may deny

vacation based on force and load only after 17% has been reached . . . ."  *Id*. (emphasis added).

Arbitrator Gootnick addresses the possibility that the award may result in last minute scheduling

changes, finding that the Memorandum of Understanding "may require overtime or last minute

scheduling of additional employees at certain times or getting by with the employees on duty.

Nevertheless, the Union has satisfied its burden of establishing that the Memorandum of

Understanding applies in all circumstances related to vacation."  *Id.* at 31.  She found "no

language in the Memorandum of Understanding that limits its application," and that it "is broadly

phrased and applies to all vacation selection and scheduling." *Id*. at 31-32.  Ultimately, she held

that "[t]he Memorandum of Understanding requires the Company to permit employees to take

vacation in order of request whenever less than 17% of the work force is not off." *Id*. at 32.

Although Arbitrator Gootnick's Award explicitly addressed the scheduling and

rescheduling of vacation days, it did not deal substantively with the provision of the MOU

addressing Short Notice Excused Workdays ("SNEWDs"),[2] which are a category of days off

requested with less than 24 hours notice before the start of the worker's shift.[3]  *Id*. ¶ 12.  After the

issuance of the arbitration award, the parties removed Arbitrator Gootnick from the panel of

arbitrators eligible to decide grievances between the Union and Verizon.  *Id*. ¶ 14; Def.'s Mot.

Ex. F (Letter to Gootnick).

The arbitration award notwithstanding, Verizon has denied vacation requests made with

less than 24 hours notice.  Compl. ¶¶ 15-16; Def.'s Stmt. ¶¶ 33, 35; Pl.'s Stmt. ¶ 6.  In light of

this circumstance, the Union subsequently requested that Arbitrator Gootnick accept remand on

the question of whether Verizon is permitted to require advance notice for vacation requests, or

---

[2]Vacation days and SNEWD days differ in several respects.  While vacation time is earned based on the time worked with the employer, SNEWD days are provided uniformly to all employees.  *See* Pl.'s Mot. at 31 n.19.  SNEWD days can only be requested within 24 hours of a worker's shift, and although vacation days are always paid, workers are entitled to four paid SNEWD days and one unpaid SNEWD day.  *See id.*; *see also* Def.'s Mot. Ex. B (1998 MOU) at 25.

[3]Arbitrator Gootnick does, however, undertake a brief comparison of SNEWD procedures and vacation procedures, noting that "[t]here is a negotiated procedure for 'short notice excused work days' under which employees are permitted to request time off on as short notice as one day," and that this procedure "guarantees time off for up to 20% of the work force."  Pl.'s Mot. Ex. 1 (Arbitration Award) at 27.  She notes that "it is difficult to understand why the Company believes it is so 'devastating' to reschedule vacation on short notice for up to 17% of each work group when in some instances it is required to permit 20% on short notice."  *Id*.

whether vacation requests made within 24 hours of a worker's shift must be granted if less than 17 percent of the workgroup is scheduled for vacation.[4]  Def.'s Stmt. ¶ 15; Def.'s Mot. Ex. G (Union Remand Request).  Verizon opposed the Union's request to submit this question to Arbitrator Gootnick, arguing that the question raised a new issue outside the scope of the grievance that had been submitted to Arbitrator Gootnick.  Def.'s Stmt. ¶ 16; Def.'s Mot. Ex. H (Verizon Objection to Remand).  On December 6, 2005, Arbitrator Gootnick declined to accept remand.  Def.'s Stmt. ¶ 17; Def.'s Mot. Ex. I (Gootnick Remand Declination).  In her letter declining to accept remand, she wrote that "on the facts of this matter I am unable to accede to your request to assert authority to accept remand of the 17% Vacation Case for clarification purposes," and noted that "[a]ny further discussion of your documents and [Verizon's] letter would be inappropriate."  Def.'s Mot. Ex. I (Gootnick Remand Declination).

## II.    LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Although a court should draw all reasonable inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The adverse party's pleadings must evince the

---

[4]After the issuance of the Arbitrator's award, although before filing this lawsuit, the Union in fact requested an arbitration on this issue with respect to a grievance filed by different workers whose short notice requests for vacation had been denied.  Def.'s Stmt. ¶¶ 38-39 (discussing "Adkins/Tyree Grievance").  The Union subsequently withdrew its request for arbitration of this grievance.  *Id*. ¶ 43.

existence of a genuine issue of material fact. *See id.* at 247–48.  To be material the factual

assertion must be capable of affecting the substantive outcome of the litigation; to be genuine,

the issue must be supported by sufficiently admissible evidence such that a reasonable trier-of-

fact could find for the nonmoving party. *See id.*; *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876,

879 (D.C. Cir. 1997); *Laningham v. United States Navy*, 813 F.2d 1236, 1242–43 (D.C. Cir.

1987).  Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an

otherwise proper motion for summary judgment.  Rather, the nonmoving party bears the

affirmative duty to present, by affidavits or other means, specific facts showing that there is a

genuine issue for trial; not simply "show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also*

*Anderson*, 477 U.S. at 248–49.  No genuine issue of material fact exists "[w]here the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.* at

587.

## III.   DISCUSSION

The parties to this suit have filed cross motions for summary judgment, and do not

dispute the surrounding facts and circumstances.  Rather, the parties dispute whether Arbitrator

Gootnick's award requires Verizon to grant workers' vacation requests made with less than 24

hours notice.  Verizon contends that the issue of such short notice requests was not part of the

arbitration award, and that the question must be submitted for a separate arbitration proceeding.

The Union contends that the Arbitrator's award contemplated these short notice requests, and

asks the Court to require Verizon to grant vacation requests made with less than 24 hours notice.

In the alternative, the Union would have the Court order a remand to Arbitrator Gootnick to

clarify her award on this point.

After consideration of the parties' arguments, it is clear to the Court that Arbitrator Gootnick's award applied the 17 percent rule to vacation requests made at any time. It is also clear that the issue of the timing of vacation requests was considered as part of the original arbitration, and that Verizon should have raised any related arguments, including the relevance of SNEWDs, during the original arbitration. The record compels the Court to find that the arbitration award is unambiguous, and applies the 17 percent rule to vacation requests made at any time, including the 24 hours before a worker's shift is scheduled to start. Consequently, remand is unnecessary, and the Court shall grant Plaintiff's Motion for Summary Judgment.

### A.      Standard of Review for an Arbitration Award

The Supreme Court has clearly stated that parties to a collective bargaining agreement must exhaust contractual grievance remedies before filing suit in court. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965). Indeed, "Congress has expressly approved contract grievance procedures as a preferred method for settling disputes . . . ." *Id*. at 653. The Court of Appeals for the District of Columbia Circuit has also stated "the well-established principle of labor law that disputes subject to mandatory arbitration under a collective bargaining agreement may not be brought to court in lieu of contractual arbitration procedures." *Commc'n Workers of Am. v. AT&T Co.*, 40 F.3d 426, 428 (D.C. Cir. 1994).

The standard for judicial review of an arbitrator's decision is the very narrow abuse of discretion standard. *See Sanders v. Washington Metro. Area Transit Auth.*, 819 F.2d 1151, 1157 (D.C. Cir. 1987). As the Supreme Court stated in *United Steel Workers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960), "the question of interpretation of the collective bargaining

agreement is a question for the arbitrator . . . .  [T]he courts have no business overruling him

because their interpretation of the contract is different from his."  *Id*. at 599.  In order to overrule

an arbitrator's decision, "[t]he case must present some egregious deviation from the norm."

*Office & Prof's Emploees Int'l Union, Local 2 v. Washington Metro. Area Transit Auth.*, 724

F.2d 133, 137 (D.C. Cir. 1983).  "The rationale for such deference arises from the parties' mutual

intent to be bound to the outcome of arbitration through a collective bargaining agreement," and

consequently, "as long as the arbitrator's decision 'draw[s] its essence from the collective

bargaining agreement,' a court is not entitled to review the decision on the merits, even when the

arbitrator's decision appears to be 'ambiguous.'"  *Am. Postal Workers Union, AFL CIO v. United

States Postal Serv.*, 362 F. Supp. 2d 284, 288 (D.D.C. 2005) (quoting *W.R. Grace & Co. v. Local

Union 759, Int'l Union of Rubber Cork, Linoleum and Plastic Workers*, 461 U.S. 757, 759

(1983)).

### B.   *Arbitrator Gootnick's Arbitration Award*

In light of the legal standard governing review of arbitration awards, the Court must

consider whether Arbitrator Gootnick's award was clear in its intent to govern vacation requests

made within 24 hours of a shift.  The Court finds that the arbitration award is clear on this point,

and the Court is not in a position to undertake its own merits-based analysis of the award.

### 1.   The Award Does Not Limit When Vacation Requests Can be Made

Arbitrator Gootnick's award does not place any limits on the time frame in which

workers may request vacation.  Indeed, her award makes it clear that the 17 percent rule is the

only limitation on vacation requests, and specifically contemplates vacation requests made on

short notice.  Her award states that "[t]he Memorandum of Understanding provides that at least

17% of the employees in each vacation administration work group shall be permitted to schedule off in a given week," and she then finds that "[t]here is nothing in the Memorandum of Understanding that requires a specific time period for scheduling (or rescheduling) vacation." Pl.'s Mot. Ex. 1 (Arbitration Award) at 24.  She goes on to state that "up to 17% of the employees in each work group can take vacation based on the earliest request on any day.  The Company may deny vacation based on force and load only after 17% has been reached . . . ."  *Id*. Arbitrator Gootnick specifically contemplates the fact that her award may result in scheduling changes at the last minute.  She found that her application of the Memorandum of Understanding "may require overtime or last minute scheduling of additional employees at certain times or getting by with the employees on duty.  Nevertheless, the Union has satisfied its burden of establishing that the Memorandum of Understanding applies in all circumstances related to vacation."  *Id*. at 31.  She found "no language in the Memorandum of Understanding that limits its application," and that it "is broadly phrased and applies to all vacation selection and scheduling."  *Id*. at 31-32.  Indeed, Arbitrator Gootnick held that "[t]he Memorandum of Understanding requires the Company to permit employees to take vacation in order of request whenever less than 17% of the work force is not off."  *Id*. at 32.

It is clear from a reading of the arbitration award that Arbitrator Gootnick found that the only limitation on workers' vacation requests was the 17 percent rule, and that their requests could not be denied unless 17 percent of the work force was already scheduled to be off.  She found no exclusions to this approach, even contemplating that her findings could create last minute scheduling difficulties.  As Plaintiff points out, the question of last minute requests was part of the issue before Arbitrator Gootnick.  Although the issue for arbitration was framed in

general terms,[5] Plaintiff demonstrates that at least one of the examples of a vacation request denial involved a last minute request.  *See* Pl.'s Reply at 2; Pl.'s Mot. Ex. 5 (Lewis Grievance). The grievance filed by Anna Lewis involved a last minute request for vacation due to a death in her family, at a time when less than 17 percent of the work force was off.  Pl.'s Mot. Ex. 5. Lewis' request for vacation was denied, and she was instead "granted excused time unpaid."  *Id*. at 2.  Consequently, Arbotrator Gootnick was aware that some vacation denials had occurred at the last minute when she made her ruling that vacation requests are subject to the 17 percent rule no matter when the requests are made.

Furthermore, it is clear from the award itself that Arbitrator Gootnick understood the difference between vacation days and SNEWDs.  She compares the SNEWD procedures with the vacation procedures, noting that "[t]here is a negotiated procedure for 'short notice excused work days' under which employees are permitted to request time off on as short notice as one day," and that this procedure "guarantees time off for up to 20% of the work force."  Pl.'s Mot. Ex. 1 (Arbitration Award) at 27.  Arbitrator Gootnick states that "it is difficult to understand why the Company believes it is so 'devastating' to reschedule vacation on short notice for up to 17% of each work group when in some instances it is required to permit 20% on short notice."  *Id*. Arbitrator Gootnick draws no distinction at this point between when vacation requests can be made and the time frame for SNEWD requests; rather, she suggests that vacation requests are all the more reasonable on short notice for Defendants because vacation requests have a higher

---

[5]The question presented for arbitration was:  "Does the Company violate the 1998 Common Issues Memorandum of Understanding by denying vacation even though less that 17 percent of the work group is off; and, if so, what is the appropriate remedy?"  Pl.'s Mot. Ex. 1 (Arbitration Award) at 3.

workforce availability requirement than SNEWD requests made in the same time frame.

Verizon makes an argument about the interaction between SNEWD procedures and vacation procedures, which does not persuade the Court to find in Verizon's favor. Verizon argues that if Arbitrator Gootnick's award permits vacation requests to be made within 24 hours of a shift, that she has impermissibly nullified the SNEWD provisions in the CBA. *See* Def.'s Mot. at 18-21. In support of this argument, Verizon cites to Plaintiff's deposition testimony, in which Plaintiff's representative states that "[i]t wouldn't be a SNEWD if it's more than 24 hours [prior to the start of a shift]," and when asked if SNEWD days and vacation days are the same thing, states "[n]o, they are not. They are totally different, two different sets of days that employees could request." *Id*. at 21 (quoting *id*. Ex. L (Thompson Dep.) 25:18-26:11). Verizon also cites to another part of the same deposition testimony for the proposition that "[t]he SNEWD provision is the only provision in the parties' contract that gives an employee the right to demand time off with less than 24 hours." Def.'s Opp. at 16 (citing to Def.'s Mot. Ex. L (Thompson Dep.) (Q: "Is there any . . . provision [other than the SNEWD provision] in the 1998 contract between the parties that addresses employees who want to take time off with 24 hours notice or less?" A: "No. The vacation time, we didn't put any barriers around vacation . . . . [I]f you had less than 17 percent off, an employee could request vacation time. There were no other barriers surrounding selection of vacation.")).

There is no dispute that Arbitrator Gootnick has "no power to add to, subtract from, modify or disregard any of the provisions" of the CBA. Def.'s Mot. Ex. A (1998 General Agreement) Article 13, Section 1(e). However, the Court does not agree with Defendants that permitting vacation requests during the 24 hours before a shift would impermissibly modify the

parties' contract.  The deposition testimony on which Defendants rely does not support

Defendants' proposition.  The first portion of Thompson's testimony only suggests that a

SNEWD day must be requested within 24 hours of a shift, but does not state that *only* a SNEWD

day can be requested in that window.  The second excerpt indicates that only the SNEWD

provision specifically contemplates requests made within 24 hours of a shift, but simultaneously

explains that there are no such timing limits on vacation requests; rather, those requests are

limited only by the 17 percent rule.

        As a practical matter, there are many instances in which an employee could use different

types of time off for a given day.  The fact that one type of time off is available does not per se

exclude another type of time off.  All Defendants have demonstrated is that SNEWD days and

vacation days are separate types of time off.  Permitting a worker to take a vacation day with

short notice, subject to the 17 percent rule, does not nullify the provision of the contract that

provides the same worker with a limited number of SNEWD days subject to the 20 percent

limitation.

        After consideration of the plain language of Arbitrator Gootnick's award, the Court finds

that the award clearly intended to require Verizon to grant vacation requests made when less than

17 percent of the workforce is off, regardless of the timing of the request.

                    **2.    New Arbitration Would be Inappropriate**

        Verizon's primary argument in this case is that the issue at hand, whether vacation

requests made within 24 hours of a worker's shift must be granted subject to the 17 percent rule,

is in fact a separate issue from what was presented to Arbitrator Gootnick, and consequently

should be submitted for a separate arbitration.  *See* Def.'s Mot. at 13-14, 21-24; Def.'s Opp. at

15-17.  The Court is mindful of "the well-established principle of labor law that disputes subject to mandatory arbitration under a collective bargaining agreement may not be brought to court in lieu of contractual arbitration procedures."  *Commc'n Workers*, 40 F.3d at 428.  However, this principle does not counsel the result Verizon seeks.

The Court finds that the issue Verizon now seeks to submit to a separate arbitration proceeding was clearly within the scope of the previous arbitration.  Consequently, the issue is not properly the subject of a new arbitration proceeding, simply because Arbitrator Gootnick did not explicitly address SNEWDs.  The timing of vacation requests is undeniably part and parcel with the larger issue of vacation requests in general.  A review of Arbitrator Gootnick's award indicates that she dealt substantively with the question of scheduling vacation requests, and whether requests had to be made at one early scheduling opportunity, or whether vacation requests, modifications, and reschedulings could be made throughout the year.  *See generally* Pl.'s Mot. Ex. 1 (Arbitration Award).  The Court is satisfied that the timing of vacation requests was built into the issue presented to Arbitrator Gootnick for arbitration.

Although the Court is mindful of the fact that Verizon may find the instant result harsh, if Verizon was concerned about whether the arbitration implicated the SNEWD provisions, Verizon was obligated to raise that perceived limitation as part of the arbitration.  Verizon neither raised its concerns about the SNEWD provisions during the arbitration, nor moved to amend the arbitration award after it was made.  Having failed to do so, Verizon cannot now raise an argument it should have raised in the arbitration, in hopes of eliminating one feature of the award by forcing the issue into a new arbitration proceeding.

In addition to its general argument that a new arbitration is required, Verizon specifically

argues that Plaintiff has conceded that this issue should be the subject of its own arbitration, based on the fact that Plaintiff submitted a grievance raising the question of whether a vacation request made with less than 24 hours notice should be granted.  *See* Def.'s Mot. at 22-24 (noting the "Adkins/Tyree Grievance").  Ultimately, the Union withdrew this grievance.  *See* Def.'s Mot. Ex. U.  Verizon argues that the filing of this grievance after Arbitrator Gootnick issued her award amounts to a concession by the Union that the issue of last minute vacation requests was not part of the Gootnick arbitration.  *See* Def.'s Mot. at 22-24.  Verizon is incorrect.  The Union's strategic decisions based on a possible reading of the award do not have any bearing on this Court's reading of the award.  This Court has found that Arbitrator Gootnick's award covered vacation requests made at any point, and did not limit the application of the 17 percent rule to vacation requests made at specific times.  The parties' polarized arguments do not change the nature of the arbitration award, or the Court's findings with respect to the award.  Accordingly, Verizon's argument with respect to the "Adkins/Tyree Grievance" are unavailing.

### C.      Remand is Both Unnecessary and Inappropriate

After Arbitrator Gootnick issued her award, the parties removed Arbitrator Gootnick from the panel of arbitrators eligible to decide grievances between the Union and Verizon. Def.'s Stmt. ¶ 14.  The Union subsequently asked Arbitrator Gootnick to accept remand on the question of whether her award required Verizon to grant vacation requests made within 24 hours of a worker's shift if less than 17 percent of the workgroup is scheduled for vacation.  *Id*. ¶ 15. Verizon opposed the Union's request to submit this question to Arbitrator Gootnick, and on December 6, 2005, Arbitrator Gootnick declined to accept remand.  *Id*. ¶¶ 16-17.

As an alternative form of relief in the instant suit, the Union requests that the Court

14

remand the underlying arbitration to Arbitrator Gootnick for her clarification of her award with respect to vacation requests made with less than 24 hours notice.  Pl.'s Mot. at 4-5, 28-37. Verizon opposes remand on the grounds that "Arbitrator Gootnick flatly rejected CWA's request for remand," indicating that she "plainly felt that she lacked the authority and obligation to accept remand, and plainly felt that her Award did not leave any remedy issue unresolved."  Def.'s Opp. at 18.  Verizon believes that Arbitrator Gootnick's refusal to accept remand amounted to a substantive rejection of CWA's argument that the award applied to vacation requests made with less than 24 hours notice.  *Id.* at 19 (stating that "Arbitrator Gootnick herself has already rejected CWA's argument that her Award applies to such requests.").

Verizon has mischaracterized Arbitrator Gootnick's refusal to accept remand.  Far from being a substantive ruling on the relative merits of the parties' positions, her refusal to accept remand was brief, contained no analysis, and specifically declined to address the parties' arguments.  In her letter declining to accept remand, she wrote that "on the facts of this matter I am unable to accede to your request to assert authority to accept remand of the 17% Vacation Case for clarification purposes," noting that "[a]ny further discussion of your documents and [Verizon's] letter would be inappropriate."  Def.'s Mot. Ex. I (Gootnick Remand Declination).  It is clear that Arbitrator Gootnick did not reject (or accept) the Union's substantive arguments on last minute vacation requests.

More to the point, however, remand is both unnecessary and inappropriate at this stage of the proceedings.  Remand is unnecessary because the Court has found that her award was sufficiently clear and does not require clarification.  Remand would also be inappropriate because Arbitrator Gootnick is no longer on the parties' panel of arbitrators, and neither party has

15

presented any legal authority under which the Court could require an arbitrator to accept remand where she has specifically declined to do so.

## IV.     CONCLUSION

After careful consideration of the parties' motions, briefs, exhibits, and the relevant law, the Court finds that Arbitrator Gootnick's arbitration award clearly requires Verizon to grant vacation requests made at any time, limited only by the 17 percent rule.  Consequently, no new arbitration is required.  The Court also finds that remanding the arbitration proceedings is unnecessary, and would be inappropriate given that Arbitrator Gootnick is no longer on the parties' panel of arbitrators and specifically declined to accept remand.  Accordingly, the Union's Motion for Summary Judgment shall be granted, and Verizon's Motion for Summary Judgment shall be denied.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge